UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| THEODUS DAVIS, on behalf of himself and those similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:16-CV-674-TRM-HBG ) |
| COLONIAL FREIGHT SYSTEMS, INC., *et al.,* | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Approve Notice and Opt-in Procedures [Doc. 93]. The parties appeared telephonically before the Court on April 11, 2018, for a motion hearing. Attorneys Justin Swidler and Travis Martinndale-Jarvis appeared on behalf of Plaintiffs. Attorneys E. Ashley Paynter, Christopher Eckhart, and Richard Hollow appeared on behalf of Defendants. Accordingly, for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion [**Doc. 93**]. The Court further **ORDERS** the parties to meet and confer with respect to the remaining disputes as discussed below.

### I. BACKGROUND

Plaintiffs filed a Complaint [Doc. 1] on September 20, 2016, and later filed an Amended Complaint [Doc. 61] on November 29, 2017. The Amended Complaint was filed against Defendants Colonial Freight Systems, Inc. ("Colonial"), Phoenix Leasing of Tennessee ("Phoenix"), and Ruby McBride. Plaintiffs allege that Defendants erroneously classified him and those similarly situated as independent contractors and unlawfully deducted and withheld their

wages in violation of the Fair Labor Standards Act ("FLSA"). [Doc. 61 at ¶ 1]. Plaintiffs allege that Defendants required him and those who are similarly situated to attend Defendants' driver-trainee program without providing wages that were free and clear and further required them to cover the costs of Defendants' businesses, intentionally reducing their wages below the minimum wage. [*Id.*]. Plaintiffs also allege violations of the Truth in Leasing Act, 49 U.S.C. § 14704, against Defendants Colonial and Phoenix. [*Id.* at ¶ 2]. Specifically, Plaintiffs state that Defendant Colonial failed to pay the rates proscribed in the Independent Contractor Operating Agreements and that Defendant Phoenix breached its contractual obligations by failing to abide by the lease-purchase terms of the Lease Agreements. [*Id.* at ¶¶ 3-4].

On March 2, 2018, the District Judge conditionally certified as a collective action two separate groups under the FLSA: the Driver-Trainee Class and the Phoenix-Lease Driver Class. [Doc. 85 at 8-14]. In addition, the District Judge certified the Phoenix-Lease Drivers as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) with respect to the alleged violations of the Truth in Leasing Act. [*Id.* at 14-22].

## II.   POSITIONS OF THE PARTIES

The parties have submitted competing notice forms with respect to the FLSA collective action and the Rule 23 class action. Because the parties indicated at the hearing that they could resolve several disputes that were presented in their filings, the Court will only summarize the primary contentions between the parties: (1) methods of notice, (2) duration of opt-in period, and (3) the applicable class and collective action definitions.

With respect to the methods of notifying individuals, Plaintiffs propose that they send two notices at different times: one notice for the collective action and one for the class action. Plaintiffs reason that the claims certified under Rule 23 are distinct from the collective action claims pursued

2

under the FLSA.  Plaintiffs insist that a hybrid notice will not benefit the class and that it will cause confusion.  Plaintiffs state that many courts authorize notice to a putative FLSA collective action in advance of a decision to certify a Rule 23 class action consisting of the same individuals.  In addition, Plaintiffs state that the procedures for joining and excluding members are different and contradictory.  Plaintiffs explain that a hybrid notice will likely cause confusion to class members because the drivers are presumably unaware of the nuances of class and collective litigation.

Further, Plaintiffs request that the FLSA collective action and the Rule 23 notices be sent via first-class mail, email, and through Defendant Colonial's Qualcomm system.  Plaintiffs state that the messages sent via Defendant Colonial's Qualcomm system should be sent on the day of the mailing, ten days after mailing, and fifteen days after mailing the notices at 12:00 p.m., CST.  In addition, with respect to the FLSA collective action, Plaintiffs request leave to send reminder notices by mail and email halfway through the notice period.

With respect to the FLSA collective action, Plaintiffs propose an opt-in period of 120 days due to the difficulties in contacting truck drivers.  Plaintiffs explain that truck drivers often spend several consecutive weeks or months on the road away from their home.

Finally, Plaintiffs argue that the class and collective actions' definitions are not overbroad as suggested by Defendants.  Plaintiffs continue that the definitions substantially mirror the language originally used in seeking certification and by the Court in granting certification.  Plaintiffs have attached to the Motion their proposed FLSA notice form [Doc. 94-1], the consent to join form [Doc. 94-2], and the Rule 23 class action notice form [Doc. 94-4].

Defendants have filed a number of objections to Plaintiffs' proposed notices.  First, Defendants argue that a hybrid notice should be sent to individuals who are members of both the FLSA collective action and the Rule 23 class action and that a separate notice should be sent to

individuals who are only members of the Rule 23 class action. In addition, Defendants argue that the notices should only be sent by first-class mail and that other methods, including emails, messages over the Qualcomm system, and reminders are duplicative and unnecessary.

Further, Defendants argue that with respect to the FLSA collective action, the opt-in period should be sixty (60) days. Defendants emphasize that courts within the Sixth Circuit have repeatedly held that sixty (60) days is sufficient time to opt-in a lawsuit. Finally, Defendants argue that the notices do not properly reflect the collective and class definitions or the time periods that were certified by the Court. Defendants have attached their own notices [Docs. 98-1 and 98-2] and consent to join form [Doc. 98-3].

## III. ANALYSIS

As mentioned above, the Court held a hearing on April 11, 2018. During the hearing, the parties agreed that there were fundamental issues that prevented them from resolving the remaining disputes. It appears to the Court that a ruling is necessary with respect to the methods of notice, the duration of the opt-in period, and the proper definitions of the class and collective actions.

The Court will address these issues separately.

### A. Methods of Notice

The parties dispute whether separate notices should be sent to the collective action and the class action. In addition, they dispute how the notices should be sent. The Court will first address the issue of separate or hybrid notices and then turn to how the notices will be sent.

#### 1. Separate or Hybrid Notice

Plaintiffs propose that the class action notice be sent after the opt-in period has expired. In support of their argument, Plaintiffs emphasize the differences between collective actions and class actions and argue that sending notices of the actions simultaneously will likely confuse the

potential members. Defendants propose sending a hybrid notice, explaining that any potential confusion can be overcome by careful wording and thoughtful organization.

As Plaintiffs have emphasized FLSA collective actions and Rule 23 class actions are inherently different. The principle difference between collective actions and class actions is that in collective actions, an individual is required to opt in as a party. 29 U.S.C. § 216(b). In Rule 23 class actions, an individual is automatically included unless he/she opts out. Fed. R. Civ. P. 23(c)(2). *See Halle v. W. Penn Allegheny Health Sys. Inc.,* 842 F.3d 215, 225 (3d Cir. 2016) ("This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not.").

The Court has considered the parties' positions and finds that the better course of action is to send the notices separately. In so finding, the Court has considered Defendants' concerns of inefficiency versus Plaintiffs' concerns of confusion. While efficiency is important, the Court finds that the three-month delay in sending the class action notice will not prejudice any party. Further, although arising in a different context, the Eleventh Circuit has explained as follows:

> Sheriff Scott also makes two practical arguments. First, he appeals to the "confusion that would necessarily result [from] sending a second notice to the class members more than six months after the initial notice was provided, and after the expiration of the collective action deadline." To the contrary, we conclude that the separate notices alleviate concerns about confusion. When the first notice went out, it informed putative plaintiffs only of the FLSA collective action claims. The opt-in period for the FLSA action is now closed. If a second notice goes out after the District Court reconsiders the employees' motion for Rule 23(b)(3) certification on remand, it will include only the FMWA claims. That means these putative plaintiffs will never be confronted with a notice that lists both an "opt-in" and an "opt-out" claim.

*Calderone v. Scott*, 838 F.3d 1101, 1107 (11th Cir. 2016).[1] Accordingly, the Court finds that sending separate notices in this particular case will further the underlying purpose of the notice process, which is simply to advise individuals of their rights with respect to each action.

### 2. Methods of Service

Plaintiffs have requested several methods of service, including first-class mail, email, announcements over Defendant Colonial's Qualcomm system, and a reminder postcard and email. Plaintiffs assert that the above methods are necessary given the transitory nature of the putative plaintiffs. Plaintiffs explain that truck drivers are generally more difficult to contact. Plaintiffs continue that reminder notices are necessary given the serious limitations (i.e., significant amount of mail is lost) using the United States Postal Service. Defendants argue that Plaintiffs' proposed methods are duplicative and unnecessary.

With respect to FLSA actions, there is "no 'one-size-fits all' approach to notifying putative class members in lawsuits." *Fenley v. Wood Group Mustang, Inc.,* 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). The goal in sending notice is to provide accurate and timely notice to potential opt-ins while promoting judicial economy. *Id.* The Court, however, "must avoid communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). With respect to Rule 23(b)(3) actions, "The court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, Rule 23(b)(3) also governs the

---

[1] In *Calderone*, the Eleventh Circuit addressed whether an employee may maintain a collective action against their employer under § 216(b) of the FLSA at the same time as a class action brought based on state law and pursuant to Rule 23. 838 F.3d at 1102. The Eleventh Circuit reversed the district court's decision that the two types of actions were "mutually exclusive and irreconcilable." *Id.*

contents of the notice. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

Consistent with this Court's past practice, the Court finds first-class mail and email are appropriate. *See Waitman v. Smoky Mountain Children's Home*, No. 3:14-CV-234-TAV-HBG, 2015 WL 2062127, at *5 (E.D. Tenn. Apr. 30, 2015) ("The undersigned will recommend that the Defendants be ordered to produce the names, the last-known addresses, phone numbers, e-mail addresses, and the dates of employment of persons who worked for the Defendant from June 2, 2011 to the present."); *Bacon v. Subway Sandwiches & Salads LLC*, No. 3:14-CV-192-PLR-HBG, 2015 WL 729632, at *12 (E.D. Tenn. Feb. 19, 2015) ("The undersigned will recommend that the Defendants be ordered to produce the names, the last-known addresses, phone numbers, and e-mail addresses."). The Court agrees that email notification "appears to be in line with the current nationwide trend" and "advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit." *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-CV-807, 2017 WL 2957741, at *6 (S.D. Ohio July 11, 2017) (quoting *Atkinson* v. *Teletech Holdings, Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *5 (S.D. Ohio Feb. 26, 2015)). In addition, email has been described as "an inexpensive, non-invasive, effective way to ensure that notice is received in a timely manner." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017). While Defendants argue that only former drivers should receive email notifications, the Court disagrees for the reasons above. *See id.* (ordering email notice to be sent to former and current employees). Accordingly, the Court finds that email and first-class mail notifications to the potential opt-in plaintiffs and class members are appropriate.

The Court has also considered Plaintiffs' request to send messages via Defendant Colonial's Qualcomm system and to send reminder postcards and emails. The Court is

unconvinced that these additional methods of notice are necessary in this case. While Plaintiffs assert that truck drivers are transitory in nature, the Court finds first-class mail and email notifications, coupled with a longer opt-in period (as explained below), are sufficient to advise members of their rights without encouraging members to join the suit or giving the impression that the Court approves the suit on its merits. *Hoffmann–La Roche Inc.*, 493 U.S. at 168-69, 174 ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). *See also Fenley*, 170 F. Supp. 3d at 1075 (concluding that issuance of a reminder notice "may unnecessarily stir up litigation or improperly suggest the Court's endorsement of [p]laintiff's claims"). Accordingly, the Court declines to order Defendant Colonial to send messages via its Qualcomm system and further finds that reminder postcards and emails are not necessary in this case.

### B. Duration of Opt-In Period

Plaintiffs request an opt-in period of 120 days given the difficulties in contacting truck drivers. Plaintiffs state that commercial truck drivers often spend several consecutive weeks or months on the road away from home. Plaintiffs explain that as such, contacting Defendants' current and former employees presents a substantially different and more challenging exercise than those faced in each of the cases to which Defendants cite. Plaintiffs state that courts within the Sixth Circuit often permit opt-in periods over sixty (60) days under appropriate circumstances and that courts have approved notices longer than 120 days when special circumstances justify it.

Defendants respond that a 60-day opt-in period is more appropriate and that district courts within the Sixth Circuit have repeatedly utilized a 60-day opt-in period for potential FLSA plaintiffs.

"There is no hard and fast rule controlling the length of FLSA notice periods." *Ganci v. MBF Inspection Servs., Inc.,* No. 2:15-CV-2959, 2016 WL 5104891, at *2 (S.D. Ohio Sept. 20, 2016). Some courts have used sixty (60) days as the standard. *Williams v. King Bee Delivery, LLC*, No. 5:15-CV-306-JMH, 2017 WL 987452, at *7 (E.D. Ky. Mar. 14, 2017); *Green v. Platinum Rest Mid-America, LLC*, No. 3:14-CV-439, 2015 WL 6454856, at *4 (Oct. 26, 2015). Other courts have utilized ninety (90) days. *Fenley*, 170 F. Supp. 3d at 1075-76; *Atkinson,* 2015 WL 853234, at *1. In addition, as Plaintiffs have emphasized in their filing, *see* [Doc. 99 at 14], some courts, albeit outside the Sixth Circuit, have utilized 120 days or more.

The Court has considered the parties' arguments and finds 120 days to be excessive and 60 days to be insufficient under these circumstances. Specifically, the Court finds that Plaintiffs have raised legitimate concerns that putative plaintiffs will not receive notice given the nature of their job. Accordingly, the Court finds that given this valid concern, the opt-in period shall be ninety (90) days. *See Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1045 (S.D. Ohio Jan. 23, 2018) ("Courts in this district have frequently used their discretion to grant ninety-day opt-in periods."); *Fenley*, 170 F. Supp. 3d at 1076 (notice period of ninety days was warranted where many putative class members had demanding work schedules which required them to be away from their homes for long periods of time).

### C. Class and Collective Action Definitions

Plaintiffs assert that their definitions of the class and collective actions, along with the time periods, are correct. Plaintiffs explain that the language substantially mirrors the language used by them in seeking certification and used by the Court in granting certification. Plaintiffs argue that Defendants rely on language found in Plaintiffs' statement of material facts. Specifically, Plaintiffs use the following language in their notice forms:

> FLSA Notice:
>
> Theodus Davis ("Mr. Davis") brought this lawsuit against Colonial Freight on behalf of himself and all other individuals who worked for Colonial Freight as a Driver Trainee and/or leased vehicles from Phoenix Leasing and then contracted to work for Colonial Freight from October 8, 2014, through the present.
>
> Class Action Notice:
>
> TO: All persons who leased a vehicle from Phoenix Leasing of Tennessee, Inc. ("Phoenix Leasing") in order to haul loads for Colonial Freight Systems, Inc. ("Colonial Freight") from September 20, 2012 to the present.

[Docs. 94-1 and 94-4]. Defendants respond that Plaintiffs' language is overbroad. Defendants state that the actions should be described as follows:

> FLSA Notice
>
> (1) All drivers who participated in Colonial's Driver Training Program and signed an Independent Contractor/Trainee Agreement at any point between October 8, 2014, and March 2, 2018; and
>
> (2) All drivers who leased a truck from Phoenix Leasing and signed an Independent Contractor Operating Agreement with Colonial at any point between October 8, 2014, and March 2, 2018.
>
> Class Action Notice
>
> All drivers who leased a truck from Phoenix Leasing and signed an Independent Contractor Operating Agreement with Colonial at any point between September 20, 2012, through March 2, 2018 (the "Federal Leasing Regulations Class").

The Court has considered the above definitions and finds that Defendants' description of the potential members is accurate. With respect to both the collective and class actions, the District Judge relied on the Independent Contractor Operating Agreements to define the actions. For instance, in determining whether class certification was appropriate, the District Judge explained

how liability can be determined on a class-wide basis—that is, "by determining whether the ICOAs [Independent Contractor Operating Agreements] violate the TIL [Truth in Lending] regulations." [Doc. 85 at 18]. Similarly, with respect to the FLSA groups, the District Judge found that Driver-Trainees were similarly situated because they were required to sign the Independent Contractor/Trainee Agreement and that the Phoenix-Lease Drivers entered into materially similar Lease Agreements and Independent Contractor Trainee/Agreements. [*Id.* at 9 and 11]. Accordingly, the Court finds Defendants' descriptions accurately reflect the class and collective actions.

With respect to the time periods in the above definitions, Plaintiffs do not propose a cut-off date for their actions, while Defendants propose March 2, 2018. Other than to assert that the opposing party's time period is inaccurate, the Court finds that the parties have not sufficiently briefed this issue. Accordingly, the Court **ORDERS** the parties to meet and confer on this issue as explained below.

### D. Remaining Disputes

The parties indicated at the hearing that they may be able to resolve the other issues regarding the substance of the notices once the Court ruled on the significant contentions. The Court is confident that the parties can and will resolve the remaining issues. The Court, however, reminds the parties of a few guiding principles that may aid them in their discussions.

As mentioned above, the purpose of the notices is simply to advise individuals of their rights in a neutral manner. *See Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011) (explaining that the purpose of a FLSA notice "is to provide potential plaintiffs with a neutral discussion of the nature of the action"); *In re Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2011 WL 13122693 (explaining that under Rule 23, the

"initial notice to class members has the critical function of apprising class members of 'accurate and impartial information regarding the status, purposes and effects of the class action'") (quoting *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1201 (11th Cir. 1985)). The parties need not explain every detail of the case as such would only lead to confusion. Generally, the notices include a description that the defendant denies liability, but the notices do not need to describe every defense the defendant has asserted. The language used in the notices should be clear and concise. The parties should "be scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Albright v. Gen. Die Casters, Inc.*, No. 5:10-CV-480, 2010 WL 6121689, at *4 (N.D. Ohio July 14, 2010) (quoting *Hoffmann-La Roche Inc.*, 493 U.S. at 174). The Court observes that there is a plethora of case law within the Sixth Circuit on the appropriate language that should be used, which will be helpful to the parties in drafting the notices.

Finally, with respect to the time periods utilized in the definitions, courts have explained that the relevant time periods should be included. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 302 F.R.D. 448, 461 (N.D. Ohio 2014) (noting that "[t]he relevant time should be included in the class definition") (quoting Manual for Complex Litigation, Fourth § 21.222 at 271 (2004)); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 WL 4260817, at *2 (E.D. Tenn. Dec. 3, 2007) (explaining the problems of a late cut-off date versus an early cut-off date).

Accordingly, the Court **DIRECTS** the parties to meet and confer in good faith for the purpose of negotiating the language of the notices. Within fourteen (14) days of this Memorandum and Order, the parties shall submit the joint proposed notices for the Court's final approval. If any specific language remains in dispute, that language shall be identified, along with each party's

proposed language and a brief summary of the parties' position. The Court will then resolve the dispute.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Approve Notice and Opt-in Procedures [**Doc. 93**]. The parties **SHALL** report to the Court within fourteen (14) days as outlined above.

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge